1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  DANE R. GILLETTE
   Chief Assistant Attorney General
3  JULIE L. GARLAND
   Senior Assistant Attorney General
4  JENNIFER A. NEILL
   Supervising Deputy Attorney General
5  BRIAN C. KINNEY, State Bar No. 245344
   Deputy Attorney General
6   455 Golden Gate Avenue, Suite 11000
    San Francisco, CA  94102-7004
7   Telephone:  (415) 703-5255
    Fax:  (415) 703-5843
8   Email:  Brian.Kinney@doj.ca.gov

9  Attorneys for Respondent Warden B. Curry

10

11            IN THE UNITED STATES DISTRICT COURT

12          FOR THE NORTHERN DISTRICT OF CALIFORNIA

13                  SAN FRANCISCO DIVISION

14

| | |
|---|---|
| **William G. Oldright,** | C07-3231 MMC |
| Petitioner, | **ANSWER TO THE ORDER TO SHOW CAUSE; MEMORANDUM OF POINTS AND AUTHORITIES** |
| **v.** | |
| **B. Curry,** | |
| Respondent. | Judge:     The Honorable Maxine M. Chesney |

20         Petitioner William G. Oldright, an inmate at the Correctional Training Facility serving an

21  indeterminate sentence for murder, represents himself in this habeas action.  Petitioner alleges

22  that the Board of Parole Hearings unconstitutionally denied him parole at his November 8, 2005

23  subsequent parole consideration hearing.  Specifically, Oldright argues that the Board violated

24  his due process rights by:  (1) relying on the unchanging factors of the murder to deny parole; (2)

25  requiring him to accept the Board's version of the facts of the crime; and (3) predicating the

26  denial on an unreasonable determination of the facts in light of the evidence presented.

27         The Court issued a June 29, 2007 Order to Show Cause why Oldright's petition should not

28  be granted.  Respondent Warden B. Curry answers as follows:

## ANSWER TO THE ORDER TO SHOW CAUSE

In response to the Petition for Writ of Habeas Corpus filed on June 1, 2007, Respondent hereby admits, denies, and alleges the following:

1.    Oldright is lawfully in the custody of the California Department of Corrections and Rehabilitation (CDCR) following his October 17, 1991 conviction for second-degree murder with an enhancement for the use of a firearm.  (Ex. A, Abstract of Judgment.)  He is currently serving an indeterminate sentence of eighteen years to life.

2.    Oldright does not challenge his underlying conviction in the current proceeding. Odlright does not contest that he received notice of his 2005 parole suitability hearing, appeared at the hearing, and received a copy of the Board's decision finding him unsuitable for parole. (*See generally* Petition.)

3.    Respondent affirmatively alleges that Oldright was convicted of second degree murder for killing his step-son, Ron Tucker.  (Ex. A; Ex. B, Fifth District Court of Appeal Opinion, dated August 25, 1993, at 3.)  Oldright and Tucker had a tumultuous relationship throughout Oldright's one-year marriage to Tucker's mother, Velma Oldright.  (Ex. B, at 2-8.)  On the day of the murder, Tucker attempted to apologize to Oldright while attending a barbeque at Oldright's and Velma Oldright's house.  (*Id.* at 6-7.)  Oldright refused to accept the apology. (*Id.*)  Later that day, Tucker called Oldright to discuss the incident.  (*Id.*)  Both Oldright and Tucker were angry as a result of the telephone conversation.  (*Id.*)  Tucker asked Oldright to state a time and a place for them to meet.  (*Id.*)  Oldright told Tucker where to meet him.  (*Id.*) Oldright called Tucker some names, hung up the phone, and told Velma's daughter to stay with her mother because Velma was going to need her.  (*Id.* at 7.)  Then, Oldright retrieved his .380 caliber semi-automatic pistol that he stored in his bedroom, got in his truck with his co-worker Carlos Cabello, and drove to their arranged meeting place to confront Tucker.  (*Id.*)  After approximately fifteen minutes, Oldright decided to drive Cabello home.  Upon returning to the meeting spot, Oldright saw Tucker's fiancee's car on the roadside.  (*Id.* at 8.)  Tucker's fiancee observed Olright's truck quickly approaching her car.  (*Id.*)  She was forced to back her car up to avoid a collision.  (*Id.*)  Then, Oldright's truck skidded to a stop, jumped the curb, and stopped in

front of her car. (*Id.*) Oldright exited his truck with the loaded gun in his hand. (*Id.* at 8, 29-30.) Oldright walked rapidly towards Tucker. (*Id.*) When Oldright was about ten to twelve feet from Tucker, Oldright raised his gun and cocked it. (*Id.* at 8, 30-31.) As Oldright approached Tucker, Oldright said that he was not "going to take it any more." (*Id.* at 8, 32.) Then, Oldright shot Tucker. (*Id.* at 8.) When Oldright fired the gun, he knew that Tucker was unarmed. (*Id.* at 8, 30-31.) Oldright then told Tucker's fiancee to call the paramedics, and waited with the victim until surrendering to sheriff's deputies. (*Id.*) Oldright told emergency personnel and law enforcement that Tucker was a felon, had threatened him, and Oldright had just done society a favor. (*Id.* at 11.) Oldright never said that the shooting was an accident. (*Id.* at 10-12.)

4.    Respondent affirmatively alleges that the physical evidence supports the conclusion that the gun muzzle must have been more than two feet from Tucker when it discharged. (*Id.* at 15-16.) The physical evidence also supports the conclusion that in order to fire the gun, one must disengage two safety mechanisms and exert nine pounds of pressure on the trigger. (*Id.*)

5.    Respondent affirmatively alleges that on November 8, 2005, Oldright appeared before the Board for a subsequent parole consideration hearing. (Ex. C, Parole Hearing Transcript, at 1.) At the hearing, the Board extensively discussed with Oldright his reasons for killing Tucker. (*Id.* at 12-19, 53-64.) During the discussion, Oldright admitted that he shot and killed Tucker. (*Id.* at 15-16, 56.) Oldright also admitted that the incident was not an accident. (*Id.* at 60.)

6.    Respondent affirmatively alleges that while Oldright was incarcerated, he was found guilty of a rules violation for conduct that could lead to violence. (*Id.* at 42-43.) On that occasion, Oldright responded to an officer's valid order by throwing his "undershorts at the officer causing him to duck and put up his hand in self-defense." (*Id.* at 42.) The Board found that this incident implied that Oldright still had some issues regarding anger. (*Id.* at 42-43, 72-73.)

7.    Respondent affirmatively alleges that when the Board confronted Oldright with their view that he may have issues regarding anger when he killed Tucker, he continued to deny even the possibility that he may have been angry at Tucker and that he may have a problem with anger. (*Id.* at 42-43; 54-64, 72-73.) Based on Oldright's lack of insight into the nature and

1   magnitude of the commitment offense, the Board found Oldright unsuitable for parole. (*Id.* at

2   71-73.) In denying parole, the Board observed Oldright's failure to appreciate his past anger and

3   aggression issues, which preceded both the murdering of his step-son and the act of throwing his

4   undershorts at the correctional officer. (*Id.*) The Board also considered Oldright's inability to

5   fully accept responsibility for these acts. (*Id.*)

6         8.    Respondent admits that Oldright filed a habeas petition in Kern County Superior Court

7   generally alleging the same causes of action that he alleges here. (Ex. D, Superior Court

8   Petition.) However, Oldright did not allege in his state petition that the Board engaged in post-

9   trial fact finding in violation of his right to a jury trial, as Oldright alleges here. (*Id.*; Petn. at 7-

10  8.) Respondent further admits that the Kern County Superior Court denied the petition, and

11  rejected each of Oldright's three claims in a reasoned decision. (Ex. E, Superior Court Order, at

12  pp. 1-4.) In denying the petition, the Kern County Superior Court stated, "the panel identified

13  some evidence to support its decision to find Petitioner unsuitable, and that some evidence did

14  not consist of the commitment offense." (*Id.* at 2.) Furthermore, the Superior Court's

15  determination of the facts concerning Oldright's petition was based on the testimony in the

16  November 8, 2005 hearing, and the discussion of the murder in the Fifth District Court of Appeal

17  Opinion. (*See id.* at pp. 2-3.)

18        9.    Respondent admits the California Court of Appeal issued an October 12, 2006 denial

19  of Oldright's habeas petition, in which he generally alleged the same causes of action as this

20  case, except for the argument that the Board conducted post-trial fact finding. (Ex. F, Appellate

21  Court Petition and Denial.)

22        10.    Respondent admits that the California Supreme Court issued a January 11, 2007 denial

23  of Oldright's petition, in which he alleged the same causes of action as this case, except for the

24  argument that the Board conducted post-trial fact finding. (Ex. G, Supreme Court Petition and

25  Denial.) Hence, Respondent admits that Oldright has exhausted his state court remedies in

26  regard to the issues currently before this Court, except for Oldright's claim that the Board

27  violated the Sixth Amendment and the decision in *Apprendi v. New Jersey*, 530 U.S. 466 (2000),

28  by engaging in post-trial fact finding. Accordingly, Oldright has failed to satisfy the exhaustion

1  requirement as to this claim.  Thus, the Court should deny it on procedural grounds.

2  *Insyxiengmay v. Morgan*, 403 F.3d 657, 667 (9th Cir. 2000).  Respondent also denies that

3  Oldright exhausted his claims to the extent that they are more broadly interpreted to encompass

4  any systematic issues beyond this particular review of the December 2005 parole denial.

5      11.  Respondent preserves the argument that Oldright does not have a federally protected

6  liberty interest in parole.  *See Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1,

7  12 (1979) (liberty interest in conditional parole-release date created by unique structure and

8  language of state parole statute); *Sandin v. Connor*, 515 U.S. 472, 484 (1995) (no federal liberty

9  interest in parole because serving a contemplated sentence does not create an atypical or

10  significant hardship compared with ordinary prison life); and *In re Dannenburg*, 34 Cal. 4th

11  1061, 1087 (2005) (California's parole scheme is a two-step process that does not impose a

12  mandatory duty to grant life inmates parole before a suitability finding); *contra Sass v. Cal. Bd.*

13  *of Prison Terms*, 461 F.3d 1123, 1128 (9th Cir. 2006) (holding that California inmates have a

14  federally protected liberty interest in parole date).

15      12.  Respondent denies that the state courts' denials of habeas corpus relief were contrary

16  to, or involved an unreasonable application of, clearly established United States Supreme Court

17  law, or that the denials were based on an unreasonable interpretation of facts in light of the

18  evidence presented.  Oldright therefore fails to make a case for relief under the Anti-Terrorism

19  and Effective Death Penalty Act of 1996 (AEDPA).

20      13.  Respondent affirmatively alleges that Oldright had an opportunity to present his case

21  to the Board, and the Board provided him with a detailed explanation for its parole denial.  (Ex.

22  C.)  Thus, Oldright received all process due under *Greenholtz*, the only clearly established

23  federal law regarding due process rights of inmates at parole consideration hearings.

24      14.  Respondent affirmatively alleges that the Board considered all relevant and reliable

25  evidence before it, and that some evidence supports its decision.  However, Respondent further

26  affirmatively alleges that the some-evidence standard does not apply in federal habeas

27  proceedings challenging parole denials, and that the some-evidence standard is only clearly

28  established federal law in the prison *disciplinary* context.

Answer to Order to Show Cause; Memorandum of Points and Authorities

Oldright v. Curry
C07-3231 MMC

15.   Respondent denies that the Board improperly relied on Oldright's commitment offense, or relied solely on Oldright's commitment offense.  Respondent affirmatively alleges that the Board also relied on other factors in determining parole suitability, such as Oldright's lack of insight into the nature of the commitment offense.  (Ex. C, at 71.)  Respondent denies that Oldright's lack of insight into the nature of the commitment offense is an unchanging factor.  However, Respondent affirmatively alleges that federal due process does not preclude the Board from relying on immutable factors to deny parole.  *Sass,* 461 F.3d at 1129.  Respondent further affirmatively alleges that the argument that the Board may not continue to rely on the circumstances of Oldright's commitment offense to deny parole is not congizable under AEDPA because it relies on circuit court dicta in *Biggs v. Terhune*, 334 F.3d 910 (9th Cir. 2003), rather than clearly established United States Supreme Court precedent.

16.   Respondent denies that Oldright maintains a clearly established federal right to prevent the Board from requiring an admission of guilt to the commitment offense when setting a parole date.  Oldright therefore fails to demonstrate a basis for relief under AEDPA for any alleged violation of California Penal Code section 5011.  Furthermore, Respondent denies that the Board violated California Penal Code section 5011.  Respondent affirmatively alleges that Oldright does not dispute that he is guilty of killing his step-son, Ron Tucker.  (Ex. C,  at 15-16, 56, 60, 64, 68.)  Respondent affirmatively alleges that Oldright elected to discuss the facts of the murder.  (*See* Ex. C, at 5 [Board informing Oldright that he was not required to admit to or discuss the offense].)  And when an inmate chooses to discuss the crime, the Board shall discuss "[t]he facts of the crime . . . with the prisoner to assist in determining the extent of personal culpability."  Cal. Code Regs., tit. 15, § 2236.

17.   Respondent denies that CDCR or the Board maintains a "no parole policy." Respondent further denies that Oldright's parole consideration hearing was conducted *pro forma.*

18.   Respondent denies that the Board violated the Sixth Amendment or conducted post-trial fact finding as addressed in *Apprendi v. New Jersey*, 530 U.S. 466 (2000).

19.   Respondent denies that Oldright maintains a clearly established federal right to have the Governor appoint, and Senate confirm, commissioners of the Board that reflect as nearly as

1  possible a cross section of the racial, sexual, economic, and geographic features of the

2  population of the state.  Oldright therefore fails to demonstrate a basis for relief under AEDPA

3  for any alleged violation of California Penal Code section 5075, subdivision (b).  Furthermore,

4  Respondent denies that the composition of the Board violated California Penal Code section

5  5075.  Respondent also affirmatively alleges that Oldright agreed to proceed with the individual

6  members of his panel, and did not state an objection to the panel when asked.  (Ex. C, at 5-6.)

7       20.   Respondent denies that Oldright maintains a clearly established federal right to have

8  the Board consider his Mental Health Evaluation.  Therefore, Oldright's claim that the Board

9  members substituted expert opinions for that of their own fails to demonstrate a basis for relief

10  under AEDPA.  Respondent affirmatively alleges that the Board considered Oldright's two

11  Mental Evaluations in determining whether he was suitable for parole.  (Ex. C, at 46-53; Ex. H,

12  Mental Health Evaluation, dated September 20, 2005; Ex. I, Mental Health Evaluation, dated

13  December 7, 2001.)  Respondent further denies that Oldright maintains a clearly established

14  federal right pursuant to the dictates of sections 62090.13, 62090.13.2, and 62090.14 of CDCR's

15  Department of Operations Manual.  Respondent affirmatively alleges that the Board complied

16  with CDCR's Department of Operations Manual, specifically sections 62090.13, 62090.13.2,

17  and 62090.14, in conducting Oldright's parole consideration hearing.  (*See* Ex. J, Department of

18  Operations Manual §§ 62090.13, 62090.13.2, 62090.14.)   Respondent denies that California

19  law requires the Board to rely on the findings of an inmate's mental evaluation when conducting

20  a parole consideration hearing.

21       21.   Respondent denies that an evidentiary hearing is necessary in this matter.

22       22.   Respondent affirmatively alleges that Oldright fails to establish any grounds for

23  federal habeas relief.

24       23.   Except as expressly admitted above, Respondent denies, generally and specifically,

25  each allegation of the petition, and specifically denies that Oldright's administrative, statutory, or

26  constitutional rights have been violated in any way.

27       Accordingly, Respondent respectfully requests that the Court deny the Petition for writ of

28  habeas corpus and dismiss these proceedings.

1 | **MEMORANDUM OF POINTS AND AUTHORITIES**

2 | **ARGUMENT**

3 | **I.**

4 | **THE STATE COURT'S DENIAL OF OLDRIGHT'S HABEAS CLAIM**
**WAS NEITHER CONTRARY TO, OR AN UNREASONABLE**

5 | **APPLICATION OF, CLEARLY ESTABLISHED FEDERAL LAW, NOR**
**BASED ON AN UNREASONABLE DETERMINATION OF THE FACTS.**

6 |

7 | The Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA) modified "the role

8 | of federal habeas courts in reviewing petitions filed by state prisoners by placing a new

9 | constraint on the power of a federal habeas court to grant a state prisoner's application for a writ

10 | of habeas corpus with respect to claims adjudicated on the merits in state court." *Williams v.*

11 | *Taylor*, 529 U.S. 362, 412 (2000) (O'Connor, J., concurring [speaking for a majority of the

12 | Court]).  Under AEDPA, a federal court may grant a writ of habeas corpus on a claim that a state

13 | court already adjudicated on the merits *only if* the state court's adjudication was either: (1)

14 | "contrary to, or involved an unreasonable application of, clearly established Federal law, as

15 | determined by the Supreme Court of the United States;" or (2) "based on an unreasonable

16 | determination of the facts in light of the evidence presented at the State Court proceeding."  28

17 | U.S.C. § 2254(d)(1-2).

18 | Here, the Kern County Superior Court decision[1]/ denying Petitioner's claim for habeas

19 | relief was neither contrary to, or an unreasonable application of, federal law, nor was it based on

20 | an unreasonable determination of the facts in light of the evidence presented.  First, Oldright

21 | received all process due under *Greenholtz*, the only clearly established federal law specifically

22 | addressing the due process rights of inmates in a parole-consideration decision.  Second, the state

23 | court decision was not based on an unreasonable determination of the facts; rather, the evidence

24 | presented supports the state court's holding.  Thus, Oldright fails to establish a violation of

25 |

26 | _____

27 | 1.  When, as here, the California Supreme Court denies a petition for review without comment, the federal court will look to the last reasoned decision as the basis for the state court's judgment. *Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991).  In this case, the Kern County Superior

28 | Court rendered the last reasoned decision.

1 │ AEDPA standards, and the state court's decision denying habeas relief must stand.

2

3 │       **A.   The Kern County Superior Court Decision Was Not Contrary to Clearly Established Federal Law.**

4

5 │      Under the first AEDPA standard, a federal court may grant habeas relief if the state court

6 │ decision was contrary to, or an unreasonable interpretation of, clearly established federal law as

7 │ determined by the Supreme Court of the United States.  Here, Oldright received all process due

8 │ under *Greenholtz*, the only clearly established federal law regarding the due process rights of an

9 │ inmate at a parole-consideration hearing.

10

11 │       **1.   Oldright received all process due under the only United States Supreme Court law addressing due process in the parole context.**

12 │      In *Greenholtz*, the United States Supreme Court established the due process protections

13 │ required in a state parole system.  The Court held that the only process due at a parole

14 │ consideration hearing is an opportunity for the inmate to present his case, and an explanation for

15 │ a parole denial.  *Greenholtz*, 442 U.S. at 16.  Petitioner's claim fails because he received both of

16 │ these protections at his November 2005 hearing.

17 │      First, Oldright fully presented his case to the Board.  (*See generally* Ex. C; *see also* Ex. C at

18 │ 5 [Board explaining Oldright's rights, including his right to present relevant documents, and

19 │ right to be heard].)  Oldright discussed his case, including the commitment offense (*id.* at 11-19,

20 │ 54-65), his rules violation in 1999 (*id.* at 42-45), his anger issues, or lack thereof (*id.* at 16, 42-

21 │ 46, 54-56), his feelings regarding the murder (*id.* at 16, 19, 68), his social history (*id.* at 19-33),

22 │ his group and employment activities (*id.* at 33-42), and his relationship with his step-son before

23 │ the murder (*id.* at 8-11).

24 │      Second, Oldright received a thorough explanation as to why the Board denied parole.  (*Id.*

25 │ at 71-75.)  The Board explained that Oldright lacks insight into the nature of the commitment

26 │ offense, and that he fails to appreciate his past anger issues, which preceded both the murdering

27 │ of his step-son and the act of throwing his undershorts at the correctional officer.  (*Id.*)

28 │ Furthermore, the Board explained that Oldright's description of both events — the killing and

1    the 1999 rules violation — demonstrated an attempt to distance himself from the personal

2    culpability associated with these acts.  (*Id.*)

3        Therefore, Oldright presented his case to the Board and received an explanation as to why

4    the Board denied him parole.  Because Oldright received all process due under *Greenholtz*, the

5    state court's adjudication of his habeas claim did not violate clearly established Supreme Court

6    precedent.  Accordingly, Oldright's claims fails under AEDPA.

7             **2.    The Ninth Circuit's some-evidence test is not clearly established
                     federal law and, therefore, Petitioner is only entitled to the process**

8             **established in *Greenholtz* - not some-evidence federal review.**

9        Oldright contends that some evidence must underlay every Board decision denying parole.

10   (Petn. at 14.)  Thus, according to Oldright, a reviewing court will not re-weigh the evidence de

11   novo, but only look to see if there is some evidence to support the Board's decision.  Oldright is

12   correct *only* with respect to a California court's review of a parole denial.  *In re Rosenkrantz*, 29

13   Cal. 4th 616, 658 (2002).  However, the some-evidence standard should not apply to a federal

14   habeas proceeding challenging a parole denial.

15       The United States Supreme Court recently reiterated that for AEDPA purposes, "clearly

16   established federal law" refers only to the holdings of the nation's highest court on the specific

17   issue presented.  *Carey v. Musladin*, __ U.S. __, 127 S. Ct. 649, 653 (2006).  In *Musladin*, the

18   Ninth Circuit held that under clearly established federal law courtroom spectators who wore

19   buttons depicting the victim in a murder trial inherently prejudiced the defendant and denied him

20   a fair trial.  *Id.* at 652.  In vacating the Ninth Circuit's decision, the Supreme Court explained

21   that the two Supreme Court cases that the Ninth Circuit relied on — one involving a defendant

22   who was required to wear prison clothing during trial and the other concerning a defendant who

23   had four uniformed troopers placed behind him at trial — involved state-sponsored courtroom

24   practices that were unlike the private conduct of the victim's family.  *Id.* at 653-54.  As a result,

25   the Court held that "given the lack of applicable holdings from [the Supreme Court], it could not

26   be said that the state court 'unreasonably appl[ied] . . . clearly established Federal law.'"  *Id.* at

27   653-54.

28       Similarly, the Supreme Court found in *Schriro v. Landrigan*, __ U.S. __, 127 S. Ct. 1933,

1942 (2007) that a federal habeas petitioner maintained no claim under AEDPA because

Supreme Court precedent finding ineffective assistance of counsel when an attorney fails to

adequately investigate mitigating evidence is factually distinct from a defense-attorney failing to

investigate mitigating evidence after the client demonstrates a reluctance to assist the

investigation, as were the facts in *Landrigan*.  Consequently, the Supreme Court has clearly

indicated that circuit courts may not import — under the guise of "clearly established federal

law" — a federal standard used in one context for a different factual circumstance.  *See e.g. id.*;

*Musladin,* 127 S. Ct. at 653 - 654.[2/]

Despite the Supreme Court's guidance in this area, the Ninth Circuit continues to extend the

*Hill* some-evidence standard of review — a Supreme Court holding applicable to prison

disciplinary hearings — to habeas petitions challenging denials of parole.  *Sass v. Cal. Bd. of*

*Prison Terms*, 461 F.3d 1123 (9th Cir. 2006) (referencing *Superintendent v. Hill*, 472 U.S. 445,

(1985) for proposition that Board's denial of parole requires some-evidence); *Irons v. Carey*, __

F.3d __, 2007 WL 2027359 (9th Cir. July 13, 2007), pet. for reh'g en banc pending..

Furthermore, *Greenholtz*, the only Supreme Court decision concerning the due process

rights of an inmate in the parole context, specifically recognized the procedural distinction

between when the government denies an inmate parole and when the government determines

guilt by way of an adversarial proceeding.  *Greenholtz*, 442 U.S. at 15-16.  Based on this

distinction, the Supreme Court determined that a denial of parole only requires the state to

provide an opportunity for the inmate to present his case and an explanation for the parole denial

- not additional protections, such as those required in a disciplinary proceeding.  *Id.* (reasoning

that "to require the parole authority to provide a summary of the evidence would convert the

[parole-consideration] process into an adversary proceeding and to equate the Board's parole

_____

2.  Likewise, the Ninth Circuit has recently affirmed this principle in a number of cases.  *See e.g.*, *Foote v. Del Papa*, 492 F.3d 1026, 1029 (9th Cir. 2007) (affirming district court's denial of habeas claim alleging ineffective assistance of appellate counsel based on an alleged conflict of interest because the Supreme Court has never held - even though Ninth Circuit has - that such an irreconcilable conflict violates the Sixth Amendment); and *Nguyen v. Garcia*, 477 F.3d 716 (9th Cir. 2007) (holding that because the Supreme Court had not extended a defendant's right to counsel to a competency hearing, federal law was not clearly established for AEDPA purposes).

1  release determination with a guilt determination").

2      As a result, for AEDPA purposes, the *Hill* some-evidence standard of review required for

3  prison *disciplinary* hearings should not apply to a federal-habeas-proceeding challenging a

4  parole denial.  However, Respondent recognizes that the Ninth Circuit has held otherwise, most

5  recently in *Irons v. Carey*, 2007 WL 2027359, and will argue this case accordingly.

6          **3.    Even if the some-evidence standard were clearly established**
              **federal law, this standard was correctly applied by the Kern**
7              **County Superior Court.**

8      Assuming the some-evidence test is clearly established Supreme Court law for parole

9  denials, Oldright's claim fails under AEDPA because the state court's decision was not contrary

10  to, and did not involve an unreasonable application of, the some-evidence requirement.

11      California law requires that some evidence support the Board's decision to deny parole.

12  *Rosenkrantz*, 29 Cal. 4th at 616.  And the Kern County Superior Court applied this some-

13  evidence standard in reviewing the Board's 2005 decision denying parole.  (Ex. E, at 2.)  As a

14  result, the state court's decision was not contrary to federal law, because both the court applied

15  the some-evidence standard and found evidence to support the Board's decision.

16      Additionally, the Kern County Superior Court decision was not "an unreasonable

17  application of" the some-evidence standard of review.  The some-evidence standard "does not

18  require examination of the entire record, independent assessment of the credibility of the

19  witnesses, or weighing of the evidence;" rather, it is satisfied if there is "any evidence in the

20  record that could support the conclusion reached by the [B]oard."  *Hill*, 472 U.S. at 455-57; *see*

21  *also Sass*, 461 F.3d at 1129 (stating that "*Hill's* some evidence standard is minimal.")

22      Here, the Superior Court properly applied the law and reasonably determined that some-

23  evidence supported the Board's decision.  (Ex. E, at 2.)  In applying the Board's decision to the

24  some-evidence test, the state court noted that "[i]mmediately after stating that the panel was

25  relying on the commitment offense alone, the presiding commissioner went on to say that the

26  panel was also concerned with (i.e., was relying on) Petitioner's insight into the events of the

27  offense.  Stated another way, the panel identified some evidence to support its decision."  (*Id.*)

28  As a result, Oldright's claim fails under AEDPA because the Kern County Superior Court

1   decision was not contrary to, or an unreasonable application of, the some-evidence test.

2   / / /

3                    **4.    The Board may rely on static factors to deny parole.**

4        Oldright also argues that due process precludes the Board from relying on static

5   factors—namely, the circumstances of the commitment offense— to deny parole.  (Petn., at 13-

6   25.)  However, his argument fails for a number of reasons.

7        First, there exists no "clearly established federal law" that prohibits the Board's ability to

8   rely on static factors to deny parole.  The Ninth Circuit has stated in dicta that the Board's

9   continued reliance on *one* unchanging factor to deny parole "could result in a due process

10   violation."  *Biggs v. Terhune,* 334 F.3d 910, 917 (9th Cir. 2003).  However, the *Biggs* court did

11   not definitively indicate that reliance on an unchanging factor necessarily violates due process,

12   only that it possibly could.  *Id.*  In *Biggs*, the court praised Biggs for being "a model inmate,"

13   and found that the record was "replete with the gains Biggs has made," including a master's

14   degree in business administration.  *Id.* at 912.  Nonetheless, the court denied habeas relief

15   because the Board's decision to deny parole, which relied solely on the commitment offense,

16   was supported by some evidence.

17        Although the Ninth Circuit recently revisited this issue again in *Irons* dicta, it held there

18   that despite "substantial" evidence of the inmate's rehabilitation in the case, the Board acted

19   properly within its discretion in continuing to rely on the circumstances of the inmate's offense

20   to deny parole.  *Irons v. Carey*, 2007 WL 2027359.  Accordingly, the Ninth Circuit has never

21   held that a Board's reliance on a static factor to deny parole violates due process.  Clearly, a

22   Board's mere consideration a of static factor is not contrary to clearly established United States

23   Supreme Court jurisprudence.

24        Second, California Penal Code section 3041, subdivision (b), requires that the Board

25   examine the commitment offense, as the Board "shall set a release date unless it determines that

26   the gravity of the current offense or offenses, is such that consideration of the public safety

27   requires a more lengthy period of incarceration."  Indeed, the California Supreme Court held in

28   *Dannenberg*, 34 Cal. 4th at 1094, that the Board may rely *solely* on the circumstances of the

1  commitment offense.

2      Also in California, the Board is directed to examine immutable factors other than the

3  commitment offense, such as the inmate's social history, past mental state, past criminal history,

4  and other relevant information.  Cal. Code Regs., tit. 15, § 2402(b).  Therefore, California law

5  not only permits the Board's reliance on static factors, it also requires the Board to examine such

6  factors.

7      Lastly, the Board, in denying parole, relied on factors other than Oldright's immutable act

8  of shooting his step-son in the neck.  (Ex. C, at 71-75.)  In fact, the Board's decision centered on

9  factors that Oldright can correct while incarcerated.  Specifically, the Board observed Oldright's

10 failure to appreciate his past anger and aggression issues, which preceded both the murdering of

11 his step-son and the act of throwing his undershorts at the correctional officer.  (*Id.* at 72-73.)

12 The Board also mentioned Oldright's inability to fully accept responsibility for these acts.  (*Id.*)

13 As a result, the Board instructed Oldright that it was denying parole based on his lack of insight

14 into these issues.  (*Id.* at 71-73.)  Accordingly, the Board's reason for denying parole was not

15 based on static factors, but rather on behavioral issues that Oldright may remedy before his next

16 parole consideration hearing.

17     Consequently, Oldright's argument that the Board violated his due process rights by using

18 static factors to support the parole denial is without merit.  Neither federal law nor California law

19 dictates that the Board cannot examine these types of criteria.  Regardless, the Board's decision

20 did not center on static factors.

21

22          **5.   The Board did not violate Oldright's federal due process rights by
               considering his insight into the events of the shooting.**

23     Oldright alleges that the Board's decision violates his due process rights because it failed to

24 obey the dictates of California Penal Code section 5011 and California Code of Regulations, title

25 15, section 2236.  Oldright's argument fails.

26     First, assuming the Board violated California law, mere violations of state law are not

27 cognizable under federal habeas law.  *Estelle v. McGuire*, 502 U.S. 62, 67 (1991).

28     Secondly, "clearly established federal law" does not prohibit a parole board from requiring

an inmate serving an indeterminate sentence to admit to committing the offense, for which he

was convicted of, before granting parole. Therefore, the Kern County Superior Court's reasoned

decision to deny this claim was not contrary to, or an unreasonable interpretation of, clearly

established federal law. As a result, Oldright fails to demonstrate a basis for relief under

AEDPA for any alleged violation of California Penal Code section 5011 or California Code of

Regulations, title 15, section 2236.

Lastly, the Board did not violate California law. In determining suitability for parole, the

Board shall consider "all relevant, reliable information available to [it]." Cal. Code Regs., tit.

15, 2402, subd. (b). The Board may consider the "circumstances of the prisoner's social history;

past and present mental state; past criminal history . . . the base and other commitment offenses,

*including behavior before, during and after the crime*, *past and present attitude toward the crime*

. . . and any other information bearing on the prisoner's suitability for release." *Id.* (emphasis

added.)

Here, one factor the Board relied on in denying parole was Oldright's insight into the events

of the crime. (Ex. C, at 71.) The Board elaborated that this lack of insight stemmed from his

inability to acknowledge the anger and aggression he demonstrated that day and his failure to

accept responsibility for his actions. (*Id.* at 73.) Accordingly, the Board appropriately relied on

Oldright's behavior before and during the crime, and his past and present attitude toward the

crime in its decision.

Oldright contends that the Board improperly based its decision on his refusal to admit guilt.

(Petn. at 19.) California law instructs that the Board shall not require "an admission of guilt to

any crime for which an inmate was committed." Cal. Penal Code § 5011, subd. (b); Cal. Code

Regs. tit. 15, § 2236. And an inmate "may refuse to discuss the facts of the crime." Cal. Code

Regs. tit. 15, § 2236. However, if an inmate chooses to discuss the crime, "[t]he facts of the

crime shall be discussed with the prisoner to assist in determining the extent of personal

culpability." *Id.* Here, Oldright admits to killing his step-son, Ron Tucker. (Ex. C, at 15-16, 56,

60, 64.) Furthermore, he elected to discuss the facts of the murder. (*See* Ex. C, at 5 [Board

informing Oldright that he was not required to admit to or discuss the offense].) Therefore, the

1  Board appropriately discussed the facts of the crime to assist in determining the extent Oldright

2  accepts personal culpability for the shooting.

3      In addition, the Board may interpret Oldright's lack of insight into the cause and nature of

4  his crime as demonstrating his unsuitability for parole.  Cal. Code Regs., tit. 15, § 2402, subds.

5  (b), (d)(3); *In re McClendon*, 113 Cal.App.4th 315, 322 (2003) (because the prisoner admitted to

6  killing his victim, the Board may consider the prisoner's lack insight into the nature and

7  magnitude of the offense); *In re Van Houten*, 116 Cal.App.4th 339, 355 (2004) (finding that the

8  prisoner's intermittent minimization of her role in the murders and ambivalence about her

9  acceptance of responsibility provided some evidence to support the Board's finding that she

10  needed further counseling).

11      In the hearing, the Board detailed how the evidence illustrates that Oldright was angry and

12  an aggressor in the incident.[3/]  (Ex. C, at 54-56, 72.)   However, when questioned about his anger

13  leading up to the shooting, Oldright quarreled with the Board over the evidence.  (Ex. C, at 55-

14  56, 72.)  Therefore, in denying parole, the Board properly interpreted Oldright's failure to

15  acknowledge this anger prior to the killing as a lack of insight into the nature and magnitude of

16  the offense.

17      When this is coupled with the anger that he demonstrated — and now denies — in the 1999

18  rules- violation incident, Oldright presents himself as an individual that fails to appreciate how

19  his anger perpetrates his violent outbursts.  Accordingly, the Board properly relied on these

20  issues to deny parole.  Furthermore, requiring Oldright to grasp this behavioral problem before

21  permitting parole is not equivalent to requiring an admission of guilt.  Therefore, the Board did

22  not violate California law.

23      Accordingly, the Court should deny Oldright's argument because he fails to demonstrate a

24  basis for relief under AEDPA and, in addition, the Board did not violate California law.

25  _____

26      3. For instance, while waiting at the designated meeting spot, the victim's fiancee observed
    Olright's truck quickly approaching her car.  (Ex. C, at 54; Ex. B, at 8.)  In fact, she was forced to
27  back her car up to avoid a collision.  (*Id.*)  Then, Oldright's truck skidded to a stop, jumped the curb,
    and stopped in front of her car.  (*Id.*)  Oldright quickly came at the victim, raised the .380 caliber
28  semi-automatic pistol over his head, and cocked it.  (*Id.*)

1    / / /

2    / / /

### 6.    The Board did not violate Oldright's federal due process rights in the manner it determined the facts.

Oldright claims that the Board violated his due process rights by ignoring the experts' opinions expressed in the mental health evaluation.  Oldright's argument fails.

First, Oldright maintains no clearly-established federal right to require the Board to conduct, consider, or rely on an inmate's mental evaluation.  Therefore, the Kern County Superior Court's reasoned decision to deny this claim was not contrary to, or an unreasonable interpretation of, clearly established federal law.  As a result, Oldright maintains no remedy under AEDPA.

*At most*, clearly established federal law requires that some evidence supports the Board's decision.  (*See* supra Part A.2-3.)  Because some evidence clearly supports the Board's decision, Oldright's argument fails under AEDPA.  (*See supra* Part A.3-5.)

Furthermore, the Board did not violate California law.  California law directs *the Board* to make the decision whether to grant or deny parole.  Cal. Penal Code § 5011, subd. (b); Cal. Code Regs. tit. 15, § 2236.  And the Board considers "[a]ll relevant, reliable information available" in making this decision.  Cal. Code Regs. tit. 15, § 2236.

Here, the Board properly considered Oldright's two most-current mental evaluations.  (Ex. C, at 46-52.)  The Board examined the conclusions of both reports, and read the relevant portions of the clinical assessments within the 2001 and 2005 mental evaluations.  (*Id.*; Ex. H; Ex. I.) Accordingly, the Board complied with California law by considering the evaluations before making its decision.

Contrary to Oldright's claim, California law does not require the Board to rely on the opinions of those who conduct the evaluations.  As legal support for his argument, Oldright cites *In re Ramirez*, 94 Cal.App.4th 549 (Ct. App. 2001), *In re Caswell*, 92 Cal.App.4th 1017 (Ct. App. 2001), and CDCR's Department of Operations Manual, sections 62909.13, 62090.13.2, and

/ / /

/ / /

1    ///

2    ///

3    ///

4    62090.14.1.  However, neither caselaw[4/] nor CDCR protocol[5/] demands that the Board, in

5    rendering its decision, yield to the expert's opinion who conducted the inmate's mental

6    evaluation.  Indeed, the members of the Board need not relinquish their authority in determining

7    whether an inmate is suitable for parole, even if a doctor, psychologist, or counselor disagrees

8    with their assessment.  *See Greenholtz*, 442 U.S. at 8 (explaining "the state may be specific or

9    general in defining the conditions for release and the factors that should be considered by the

10   parole authority").

11        The law requires only that some evidence supports the Board's decision.  Accordingly, the

12   evidence here — the facts indicating Oldright's anger before the killing (Ex. C*, at 54; Ex. B, at

13   8), Oldright's testimony denying he was angry that day (Ex. C, at 55-56, 72), the facts

14   surrounding Oldright's 1999 rules-violation (*id.* at 42-43), Oldright's testimony that his conduct

15   was not due to anger (*id.* at 43) — supports the Board's finding that Oldright lacks insight into

16   the nature and magnitude of these events.  Accordingly, some evidence supports the Board's

17   decision.

18

19        **B.   The Kern County Superior Court Decision Upholding the Board's Parole**
                **Denial Reasonably Determined the Facts.**

20

21        Under the second AEDPA standard, a federal court may grant habeas relief if the state court

22   decision was based on an unreasonable determination of the facts in light of the evidence

23   _____

24        4. Both *Ramirez*, 94 Cal.App.4th at 571, and *Caswell*, 92 Cal.App.4th at 1030, were examined under
     the some-evidence test and each case centered on whether some evidence supported the Board's decision.
25   *Caswell* did not concern a mental evaluation, and *Ramirez*, 94 Cal.App.4th at 571-572, did not require the
     Board to rely on the conclusions of the clinical experts.

26
         5. Sections 62909.13, 62090.13.2, and 62090.14.1 of the DOM does not concern the Board's parole
27   decision and does not address how much weight the Board should assign the evaluation.  (Ex. J.)
     Furthermore, CDCR's November 18, 2005 memorandum directs the members of the parole panel to make
28   their own independent determination of the inmate's insight into the crime.  (Petn. at Ex. D.)

1   presented at the State Court proceeding." 28 U.S.C. § 2254(d)(2).  AEDPA also requires federal

2   habeas courts to presume the correctness of state courts' factual findings unless a petitioner

3   rebuts this presumption with "clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

4       Here, the Kern County Superior Court found that "the panel identified some evidence to

5   support its decision to find Petitioner unsuitable." (Ex. E, at 2.)  The Superior Court's

6   determination of the facts was based on the testimony in the November 8, 2005 parole hearing,

7   and the discussion of the murder in the Fifth District Court of Appeal Opinion.  (*See id.* at 2-3.)

8   Since the additional evidence Oldright presented to the state court did not dispute those facts (*see*

9   Ex. D, at exhibits A-F.), the state court decision was not based on an unreasonable determination

10  of the facts presented.   Furthermore, Oldright fails to provide this Court with clear and

11  convincing evidence to the contrary.  Therefore, Oldright cannot demonstrate a basis for relief

12  under the second AEDPA standard.

13  / / /

14  / / /

15  / / /

16  / / /

17  / / /

18  / / /

19  / / /

20  / / /

21  / / /

22  / / /

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

1    / / /

2    / / /

3    / / /

4

5    <u>**CONCLUSION**</u>

6    Oldright fails to demonstrate a basis for relief under AEDPA's two standards permitting a

7    habeas remedy after a state court has already adjudicated the same issue.  Under the first

8    standard, the Kern County Superior Court's adjudication of Petitioner claim was not contrary to,

9    or an unreasonable application of, clearly established federal law, as determined by the Supreme

10    Court of the United States.  Petitioner received all process entitled under *Greenholtz*, and —

11    although not clearly established federal law — the some-evidence test was nonetheless applied

12    by the state court.  Under the second AEDPA standard, Oldright fails to show that the Kern

13    County Superior Court decision was based on an unreasonable determination of the facts.

14    Rather, the Fifth District Court of Appeal Opinion and the testimony in the November 8, 2005

15    hearing supports the state court's factual interpretation.

16    Dated:  October 29, 2007

17                                         Respectfully submitted,

18                                         EDMUND G. BROWN JR.
                                          Attorney General of the State of California

19                                         DANE R. GILLETTE
                                          Chief Assistant Attorney General

20                                         JULIE L. GARLAND
                                          Senior Assistant Attorney General

21

22                                         JENNIFER A. NEILL
                                          Supervising Deputy Attorney General

23

24

25                                         /S/  BRIAN C. KINNEY
                                          BRIAN C. KINNEY

26                                         Deputy Attorney General
                                          Attorneys for Respondent

27

28
      OLDRIGHT.wpd

      Answer to Order to Show Cause; Memorandum of Points and Authorities                Oldright v. Curry
                                                                                          C07-3231 MMC

1    SF2007200555
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Answer to Order to Show Cause; Memorandum of Points and Authorities

Oldright v. Curry
C07-3231 MMC

1

**TABLE OF CONTENTS**

2
**Page**

3
ANSWER TO THE ORDER TO SHOW CAUSE    2

4
MEMORANDUM OF POINTS AND AUTHORITIES    8

5
ARGUMENT    8

6

7
     I.    THE STATE COURT'S DENIAL OF OLDRIGHT'S HABEAS CLAIM WAS NEITHER CONTRARY TO, OR AN UNREASONABLE APPLICATION OF, CLEARLY

8
ESTABLISHED FEDERAL LAW, NOR BASED ON AN UNREASONABLE DETERMINATION OF THE FACTS.    8

9

10
       A.    The Kern County Superior Court Decision Was Not Contrary to Clearly Established Federal Law.    9

11

12
         1.    Oldright received all process due under the only United States Supreme Court law addressing due process in the parole context.    9

13

14
         2.    The Ninth Circuit's some-evidence test is not clearly established federal law and, therefore, Petitioner is only entitled to the process established in *Greenholtz* - not some-evidence federal review.    10

15

16

17
         3.    Even if the some-evidence standard were clearly established federal law, this standard was correctly applied by the Kern County Superior Court.    12

18

19

20
         4.    The Board may rely on static factors to deny parole.    13

21

22
         5.    The Board did not violate Oldright's federal due process rights by considering his insight into the events of the shooting.    14

23

24
       B.    The Kern County Superior Court Decision Upholding the Board's Parole Denial Reasonably Determined the Facts.    18

25
CONCLUSION    20

26

27

28

1

## TABLE OF AUTHORITIES

2

Page

3

**Cases**

*Apprendi v. New Jersey*
530 U.S. 466 (2000)                                                        4, 6

*Biggs v. Terhune*
334 F.3d 910, 917 (9th Cir. 2003)                                          6, 13

*Carey v. Musladin*
__ U.S. __, 127 S. Ct. 649, 653 (2006)
                                                                          10, 11

*Estelle v. McGuire*
502 U.S. 62, 67 (1991)                                                     14

*Foote v. Del Papa*
492 F.3d 1026, 1029 (9th Cir. 2007)                                        11

*Greenholtz v. Inmates of Neb. Penal & Corr. Complex*
442 U.S. 1, 12 (1979)                                          5, 8-11, 18, 20

*In re Caswell*
92 Cal.App.4th 1017 (Ct. App. 2001)                                        17, 18

*In re Dannenburg*
34 Cal. 4th 1061, 1087 (2005)                                              5, 13

*In re McClendon*
113 Cal.App.4th 315, 322 (2003)                                            16

*In re Ramirez*
94 Cal.App.4th 549 (Ct. App. 2001)                                         17, 18

*In re Rosenkrantz*
29 Cal. 4th 616, 658 (2002)                                                10, 12

*In re Van Houten*
116 Cal.App.4th 339, 355 (2004)                                            16

*Insyxiengmay v. Morgan*
403 F.3d 657, 667 (9th Cir. 2000)                                          5

*Irons v. Carey*
__ F.3d __, 2007 WL 2027359 (9th Cir. July 13, 2007)                       11-13

*Nguyen v. Garcia*
477 F. 3d 716 (9th Cir. 2007)                                              11

*Sandin v. Connor*
515 U.S. 472, 484 (1995)                                                   5

*Sass v. Cal. Bd. of Prison Terms*
461 F.3d 1123, 1128 (9th Cir. 2006)                                 5, 6, 11, 12

4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TABLE OF AUTHORITIES  (continued)**

1

                                                                                    **Page**

2
*Schriro v. Landrigan*
3 __ U.S. __, 127 S. Ct. 1933, 1942 (2007)                                           10, 11

4 *Superintendent v. Hill*
472 U.S. 445, (1985)                                                                11, 12

5
*Williams v. Taylor*
6 529 U.S. 362, 412 (2000)                                                                 8

7 *Ylst v. Nunnemaker*
501 U.S. 797, 803-04 (1991)                                                              8

8

9 **Constitutional Provisions**
United States Constitution, Sixth Amendment                                      4, 6, 11

10

11 **Statutes**
California Code of Regulations, Title 15
12          § 2236                                                            6, 14, 15, 17
           § 2402, subdivision (b)                                             14, 15, 16
13          § 2402, subdivision (d)(3)                                                  16

14 California Penal Code
           § 5011                                                                6, 14, 15
15          § 5011, subdivision (b)                                                15, 17
           § 5075                                                                        7
16          § 5075, subdivision (b)                                                      7

17 United States Code, Title 28
           § 2254(d)(1-2)                                                                8
18          § 2254(d)(2)                                                                18
           § 2254(e)(1)                                                                 18

19

20 **Other Authorities**
Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA)               5-12, 15-20

21
California Department of Corrections and Rehabilitation Department of Operations Manual
22          § 62090.13                                                            7, 17, 18
           § 62090.13.2                                                          7, 17, 18
23          § 62090.14                                                              7, 18
           § 62090.14.1                                                                18

24

25

26

27

28

## DECLARATION OF SERVICE BY U.S. MAIL

Case Name:   **Oldright v. Curry**

Case No.:    **C07-3231 MMC**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar, at which member's direction this service is made. I am 18 years of age or older and not a party to this matter. I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service. In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service that same day in the ordinary course of business.

On **October 29, 2007,** I served the attached

**ANSWER TO THE ORDER TO SHOW CAUSE; MEMORANDUM OF POINTS AND AUTHORITIES**

by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the internal mail collection system at the Office of the Attorney General at 455 Golden Gate Avenue, Suite 11000, San Francisco, CA 94102-7004, addressed as follows:

William Oldright
H-14131
Correctional Training Facility
P.O. Box 689
Soledad, CA 93960-0689
in pro per

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on **October 29, 2007**, at San Francisco, California.

|  |  |
|---|---|
| R. Panganiban | |
| Declarant | Signature |

20111480.wpd