# EXHIBIT  D

Name **WILLIAM OLDRIGHT**

Address **P.O. BOX 689      BW-104L**

**SOLEDAD, CA      93960-0689**

CDC or ID Number  **H-14131**

*Original*

MAY 1 0 2006      MC-271

**F I L E D**
KERN COUNTY

MAY 2 2 2006

TERRY McNALLY, CLERK
BY _____ DEPUTY

## SUPERIOR COURT OF CALIFORNIA

## IN AND FOR THE COUNTY OF KERN

*(Court)*

**WILLIAM OLDRIGHT**
Petitioner

vs.

**A.P. KANE, WARDEN, et al.**

Respondent

PETITION FOR WRIT OF HABEAS CORPUS

No. **HC9327A**

*(To be supplied by the Clerk of the Court)*

## INSTRUCTIONS — READ CAREFULLY

- If you are challenging an order of commitment or a criminal conviction and are filing this petition in the Superior Court, you should file it in the county that made the order.

- If you are challenging the conditions of your confinement and are filing this petition in the Superior Court, you should file it in the county in which you are confined.

- Read the entire form *before* answering any questions.

- This petition must be clearly handwritten in ink or typed. You should exercise care to make sure all answers are true and correct. Because the petition includes a verification, the making of a statement that you know is false may result in a conviction for perjury.

- Answer all applicable questions in the proper spaces. If you need additional space, add an extra page and indicate that your answer is "continued on additional page."

- If you are filing this petition in the Superior Court, you need file only the original unless local rules require additional copies. Many courts require more copies.

- If you are filing this petition in the Court of Appeal, file the original and four copies.

- If you are filing this petition in the California Supreme Court, file the original and thirteen copies.

- Notify the Clerk of the Court in writing if you change your address after filing your petition.

- In most cases, the law requires service of a copy of the petition on the district attorney, city attorney, or city prosecutor. See Penal Code section 1475 and Government Code section 72193. You may serve the copy by mail.

Approved by the Judicial Council of California for use under Rules 56.5 and 201(h)(1) of the Califonia Rules of Court [as amended effective January 1, 1999]. Subsequent amendments to Rule 44(b) may change the number of copies to be furnished the Supreme Court and Court of Appeal.

Page one of six

Form Approved by the
Judicial Council of California
MC-275 [Rev. January 1, 1999]
Optional Form
PETITION FOR WRIT OF HABEAS CORPUS
WEST GROUP
Penal Code, § 1473 at seq.;
Cal. Rules of Court, rules 56.5, 201(h)

This petition concerns:

☐ A conviction                    ☒ Parole

☐ A sentence                      ☐ Credits

☐ Jail or prison conditions       ☐ Prison discipline

☐ Other (specify): _____

1. Your name:  WILLIAM OLDRIGHT

2. Where are you incarcerated?  CORRECTIONAL TRAINING FACILITY, SOLEDAD, CA

3. Why are you in custody?     ☒ Criminal Conviction    ☐ Civil Commitment

   *Answer subdivisions a. through i. to the best of your ability.*

   a. State reason for civil commitment or, if criminal conviction, state nature of offense and enhancements (for example, "robbery with use of a deadly weapon").

      Murder: Second Degree - Used Firearm

      _____

   b. Penal or other code sections:  187 (A)

   c. Name and location of sentencing or committing court: SUPERIOR COURT OF CALIFORNIA, COUNTY OF KERN,

      1415 TRUXTUN AVE., BAKERSFIELD, CA    93301-4172

   d. Case number:  SCO 46078

   e. Date convicted or committed:  10/17/91

   f. Date sentenced:  10/17/91

   g. Length of sentence:  18 years to Life

   h. When do you expect to be released?  3/29/03 (MEPD)

   i. Were you represented by counsel in the trial court?  ☒ Yes.  ☐ No.  If yes, state the attorney's name and address:

      Timothy J. Lemucchi, Attorney at Law, 918 Truxtun Ave., Bakersfield, CA 93303

      _____

4. What was the LAST plea you entered? *(check one)*

   ☒ Not guilty  ☐ Guilty  ☐ Nolo Contendere  ☐ Other: _____

5. If you pleaded not guilty, what kind of trial did you have?

   ☒ Jury  ☐ Judge without a jury  ☐ Submitted on transcript  ☐ Awaiting trial

---

MC-275 [Rev. January 1, 1999]          PETITION FOR WRIT OF HABEAS CORPUS          Page two of six

8. Did you appeal from the conviction, ___nce, or commitment?   XX  Yes.  ☐ .   If yes, give the following information:

   a. Name of court ("Court of Appeal" or "Appellate Dept. of Superior Court"):
     Fifth Appellate District Court of Appeal

   b. Result:  Denied       c. Date of decision:  8/25/93

   d. Case number or citation of opinion, if known:  F016858

   e. Issues raised:  (1)  Unknown

       (2)

       (3)

   f. Were you represented by counsel on appeal?  XX  Yes.  ☐ No.  If yes, state the attorney's name and address, if known:

     Jim Fahey, P.O. Box 4926, Arcata, CA 95518-4926

9. Did you seek review in the California Supreme Court?  XX  Yes.  ☐ No.  If yes, give the following information:

   a. Result:  Denied       b. Date of decision: Unknown

   c. Case number or citation of opinion, if known:  Unknown

   d. Issues raised:  (1)

       (2)

       (3)

10. If your petition makes a claim regarding your conviction, sentence, or commitment that you or your attorney did not make on appeal, explain why the claim was not made on appeal:
     N/A

11. Administrative Review:

   a. If your petition concerns conditions of confinement or other claims for which there are administrative remedies, failure to exhaust administrative remedies may result in the denial of your petition, even if it is otherwise meritorious. (See *In re Muszalski* (1975) 52 Cal.App.3d 500 [125 Cal.Rptr. 286].) Explain what administrative review you sought or explain why you did not seek such review:
     Administrative remedies are no longer available for parole decisions.

   b. Did you seek the highest level of administrative review available?  ☐ Yes.  ☐ No.  N/A
    *Attach documents that show you have exhausted your administrative remedies.*

MC-275 [Rev. January 1, 1999]     PETITION FOR WRIT OF HABEAS CORPUS     Page five of six

12. Other than direct appeal, have you filed any other petitions, applications, or motions with respect to this conviction, commitment, or issue in any court?    [XX] Yes. If yes, continue with number 13.    [ ] No. If no, skip to number 15.

13. a. (1) Name of court: __Superior Court, Appellate Court and Calif. Supreme Court__

   (2) Nature of proceeding (for example, "habeas corpus petition"): __Habeas Corpus and Petition for Review__

   (3) Issues raised: (a) __Violation of Constitutional Due Process rights in parole denial.__

      (b) _____

   (4) Result (Attach order or explain why unavailable): __Denied. Attached as Exh. 'I'__

   (5) Date of decision: __3/09/06__

   b. (1) Name of court: _____

   (2) Nature of proceeding: _____

   (3) Issues raised: (a) _____

      (b) _____

   (4) Result (Attach order or explain why unavailable): _____

   (5) Date of decision: _____

   c. For additional prior petitions, applications, or motions, provide the same information on a separate page.

14. If any of the courts listed in number 13 held a hearing, state name of court, date of hearing, nature of hearing, and result:

_____

_____

15. Explain any delay in the discovery of the claimed grounds for relief and in raising the claims in this petition. (See In re Swain (1949) 34 Cal.2d 300, 304.)

_____

_____

16. Are you presently represented by counsel?    [ ] Yes.    [XX] No. If yes, state the attorney's name and address, if known:

_____

17. Do you have any petition, appeal, or other matter pending in any court?    [XX] Yes.    [ ] No. If yes, explain:

__Petition for Writ of Habeas pending in U.S. District Court, Eastern District__

18. If this petition might lawfully have been made to a lower court, state the circumstances justifying an application to this court:

_____

_____

I, the undersigned, say: I am the petitioner in this action. I declare under penalty of perjury under the laws of the State of California that the foregoing allegations and statements are true and correct, except as to matters that are stated on my information and belief, and as to those matters, I believe them to be true.

Date: __5-4-2006__    _William Oldright_    _William Oldright_
                                                              (SIGNATURE OF PETITIONER)

MC-275 [Rev. January 1, 1999]    PETITION FOR WRIT OF HABEAS CORPUS    Page six of six

-6-                                                              5

6. GROUNDS FOR RELIEF
**Ground 1:** State briefly the ground on which you base your claim for relief. For example, "the trial court imposed an illegal enhancement." *(If you have additional grounds for relief, use a separate page for each ground. State ground 2 on page four. For additional grounds, make copies of page four and number the additional grounds in order.)*

THE BOARD'S CONTINUAL USE OF UNCHANGING FACTORS SUCH AS THE GRAVITY OF THE OFFENSE

AS THE PRIMARY REASON TO DENY PAROLE IS A VIOLATION OF PETITIONER'S LIBERTY INTEREST

IN PAROLE AND DUE PROCESS RIGHTS AS PROTECTED BY THE FOURTEENTH AMENDMENT TO THE UNITED

STATES CONSTITUTION.

a. Supporting facts:
Tell your story briefly without citing cases or law. If you are challenging the legality of your conviction, describe the facts upon which your conviction is based. *If necessary, attach additional pages.* CAUTION: You must state facts, not conclusions. For example, if you are claiming incompetence of counsel you must state facts specifically setting forth what your attorney did or failed to do and how that affected your trial. Failure to allege sufficient facts will result in the denial of your petition. (See *In re Swain* (1949) 34 Cal.2d 300, 304.) A rule of thumb to follow is: *who* did exactly *what* to violate your rights at what time *(when)* or place *(where)*. *(If available, attach declarations, relevant records, transcripts, or other documents supporting your claim.)*

1. On November 8, 2005, Petitioner, convicted of a second degree murder with the use of a firearm by a jury, was given his Second (2nd) Subsequent Parole Hearing before the Board of Parole Hearings (hereinafter BPH or Board).

2. A copy of the Transcripts for said hearing is attached as Exhibit 'A' of this petition.

3. Petitioner was Illegally found unsuitable at this hearing based upon "... the commitment offense alone, primarily,..." an unchanging factor.

4. In order to reach the conclusion that the Gravity of the commitment offense alone presented "some evidence" that Petitioner still presented an unreasonable risk of threat to society, the Board had to RECHARACTERIZE the offense as one carrying a more severe penalty (e.g. a 1st degree murder) and not the offense of which a jury convicted him.

b. Supporting cases, rules, or other authority (optional):
*(Briefly discuss, or list by name and citation, the cases or other authorities that you think are relevant to your claim. If necessary, attach an extra page.)*

Petitioner has a liberty interest in his petition for parole. U.S. Constitution,

Amendment XIV; California Constitution Article I §§ 7 & 15; PC § 3041; CCR § 2250;

McQuillion v. Duncan (2003) 306 F.3d 895; In re Rosenkrantz (2002) 95 Cal.4th 358;

(Continued on Ground 1 Page 3a)

1  Ground 1: b. Supporting cases, rules: (continued)

2  In re Ramirez (2001) 94 Cal.App.4th 549; In re Seabock (1983) 10 Cal.App.2d

3  29; Board of Pardons v. Allen (1987) 482 U.S. 369; Greenholtz v. Nebraska

4  Penal Inmates (1979) 442 U.S. 1, 7-11.

5       Recently, the 9th Circuit Federal Court ruled in Biggs v. Terhune

6  (2003) 334 F.3d 901 that the continual reliance on the unchanging factors

7  such as the commitment offense and prior conduct to deny parole raises

8  serious questions concerning due process violations.

9       The Biggs court ruled this way because to find a prisoner unsuitable

10  based only on his past effectively converts the sentence to Life Without

11  the Possibility of Parole. Had the prisoner committed a crime which carries

12  a sentence of Life Without the Possibility of Parole he would not be

13  appearing before the Board to begin with. Petitioner was found guilty

14  of a second degree murder. The Trial Judge commented that in his opinion

15  the offense was "akin to self defense". There is absolutely nothing about

16  Petitioner's offense that rises to the level of egregiousness such that

17  the exception clause of PC § 3041(b) should be repeatedly used against

18  him.

19       Since the Biggs ruling, a progeny of Federal Cases (and several State

20  cases) have also ruled that the offense alone is not enough to deny parole

21  unless it is particularly egregious.

22       In In re Ramirez (12-01-01) 94 Cal.App.4th 549; at 570, the court

23  held that parole could not be withheld absent a factual finding that the

24  offense was "particularly egregious". Petitioner's offense does not fit

25  this criteria.

26       At his INITIAL parole hearing held on 4/15/2003, the Board found

27  Petitioner suitable for parole, determined that the offense fit the CCR

28  § 2403(c) matrix at the junction of B II and noted that the victim

1  Ground 1: b. Supporting cases, rules: (continued)

2  contributed to the outcome of the offense. These findings were based,

3  in no small part, on the comments of the Trial/Sentencing judge.

4      The CIRCUMSTANCES of this offense as defined in CCR § 2403(c) B II

5  recommends a term of 17-18-19 years. This, although it is not the lowest

6  bracket on the Matrix of Base Terms, does clearly indicate that the gravity

7  of the offense is not particularly egregious and is in fact much less

8  egregious than other second degree murders carrying more severe penalties

9  but which still indicate the eligibility for parole.

10     When considered in conjunction with all the other mitigating factors,

11 CCR § 2404(a) (2), (4), (6), (7) & (8), factors attested to in the official

12 record by the Trial/Sentencing judge, a source much closer to all the

13 facts of the offense than the Board, it is obvious that Petitioner's crime

14 certainly does not merit the conclusion reached by the Board.

15     In Sandin v Conner 512 U.S. 472, 487 & n. 11 (1995) it was ruled

16 that arbitrary state decisions against prisoners may violate their due

17 process rights.

18     Of particular interest in this case is that the Board stated that

19 the denial was based upon "... the commitment offense alone, primarily,..."

20 and yet did not give one single fact or piece of evidence to support what

21 it was about the crime that made Petitioner unsuitable. As will be

22 addressed infra, the Board then went on to claim that this Petitioner

23 needed insight (Ground 2 of this petition) into alleged circumstances

24 of the crime that he maintains are incorrect, are mere speculations by

25 the Board, and are unsupported by the ANY evidence whatsoever.

26     Even if there had been some circumstance or factor in Petitioner's

27 offense that the Board "felt" was particularly egregious (although it

28 is difficult to imagine how any factor in this case could be considered

3b

Ground 1: b. Supporting cases, rules: (continued)

more egregious than any other second degree murder), it would still be a due process violation to continue using such a circumstance against Petitioner as it is something that can never change. (Please see Biggs, supra, at 917 "[C]ontinued reliance... on an unchanging factor, the circumstance of the offense and conduct prior to imprisonment... could result in a due process violation."

Petitioner has an unblemished history. Was a productive, tax paying citizen, a family man and a veteran of the Korean War. This sole transgression is an anomaly in his life which occurred some 14 years ago. The predictive value of the offense alone has long sense lost whatever value it might once have had.

PC § 3041 requires that Petitioner be found suitable and paroled unless there is some evidence that he is currently an unreasonable risk of threat to the public safety. There is no such evidence no matter how many times and ways the Board claims there is. The offense was, in the words of the Trial/Sentencing Judge, "akin to self defense".

Petitioner has received totally supportive Psychological Evaluations throughout his incarceration. The EXPERT WITNESSES of the Mental Health Department have clearly stated that Petitioner has no emotional or mental problems that require therapy now or upon release. (Please see Psychological Evaluation attached as Exhibit 'B'). The EXPERTS also find him to be no more of a threat to the public than the average citizen. In their EXPERT OPINION they found Petitioner to have great insight into the causative factors of his offense as well as sincere remorse for the loss of life at his hands and the impact it had then, and probably still has today, on the victim's family.

//

3c

7. Ground 2 or Ground     2    (if appli... ..le):

THE BOARD'S FINDINGS THAT PETITIONER HAD TO ACCEPT RESPONSIBILITY AND GAIN INSIGHT

TO THEIR VERSION OF THE OFFENSE IS A VIOLATION OF PC § 5011 AND CCR § 2236 AND

THEREFORE AMOUNTS TO A VIOLATION OF DUE PROCESS RIGHTS UNDER THE FIFTH AND FOURTEENTH

AMENDMENTS TO THE U.S. CONSTITUTION.

a. Supporting facts:

1. Petitioner has always accepted responsibility for the actions he took that resulted in the death of the victim. Petitioner has addressed his culpability and has good insight into the causative factors underlying his actions.

2. The previous Board, claiming the Psychological Evaluation prepared for that hearing was insufficient, presented specific questions to the Mental Health Department regarding Petitioners acceptance and insight (Please see Decision pages of previous hearing attached as Exhibit 'C' p. 71, lines 24-26).

3. The EXPERT OPINION of the Doctors of the Mental Health Department who administered the Psychological Evaluation attest to Petitioner's acceptance, remorse, understanding and insight. (Please see Exhibit 'B').

4. All of Petitioner's previous Psychological Evaluations have reached the same conclusions; i.e., that Petitioner accepts responsibility for his actions, is remorseful over the senseless loss of life, understands and has good insight into the causative factors underlying his actions.

5. The Board is MASKING their insistence that Petitioner admit to and accept THEIR version of what happened (even though it does not agree with the record) behind their claim that he does not have insight into the causative factors of his actions and, accept responsibility for the crime.

b. Supporting cases, rules, or other authority:

PC § 5011 states: "The Board of Prison Terms shall not require, when setting parole dates, an admission of guilty to any crime for which an inmate was committed."

CCR § 2236 states: "The facts of the crime of the crime shall be discussed with the prisoner to assist in determining the extent of personal culpability.

(continued on Ground 2 page 4a)

MC-275 (Rev. January 1, 1999)              PETITION FOR WRIT OF HABEAS CORPUS                Page four of six

Ground 2: b. Supporting cases, rules: (continued)

> The board shall not require an admission of guilt to any crime for which the prisoner was committed. A prisoner may refuse to discuss the facts of the crime in which instance a decision shall be made based on the other information available and the refusal shall not be held against the prisoner. Written material submitted by the prisoner under §2249 relating to personal culpability shall be considered."

In spite of these CLEAR and UNAMBIGUOUS statute and regulatory instructions, the Board finds Petitioner unsuitable for parole due to his version of what happened differing from theirs:

> "And you characterize it as if somehow out of a situation where you weren't angry, you were afraid of him, you were concerned about him but you weren't angry and you weren't aggressive, that somehow this gun went off and shot him. That makes us feel like you need to gain a little more insight related to the offense." (Exhibit 'A' Hearing Decision page 72, lines 18 - 25. Emphasis added).

The Board is obviously DEMANDING that Petitioner change his description of the offense and adopt theirs. Just as clear is the fact that KNOWING that it is illegal to require Petitioner to admit guilt or agree with their version of what happened, they tried to hide this violation of law by posing it as a lack of insight. Considering all the statements made by the Board together the only conclusion that can be reached is that Petitioner will never be found suitable as long as his version differs from the boards. e.g."

> "This is a one year denial and it is -- It is due to the commitment offense alone, primarily, and the fact that we have some, we have some hesitation related to insight and what happened that day." (Id at p. 71, lines 7-18. Emphasis added).

It appears that the Board believes they know more about what happened that day than the Judge, Jury, Mental Health EXPERTS, and Petitioner does. And since they are all knowing, and believe they are above the law, they have found Petitioner unsuitable for lack of insight into the circumstances of THEIR version.

4a

Ground 2: b. Supporting cases, rules: (continued)

The Board bases their conclusions on Speculation and Assumption unsupported by a single fact in the record. "Because you can't shoot somebody without aiming the gun at them." (Id p. 72, lines 4-6)

Particularly interesting is the use of the word "aiming". Evidently, Presiding Commissioner Fisher, previously Executive Director of the Doris Tate Crime Victims Bureau, is unfamiliar with a single incident in which someone was shot by a person who was not "AIMING" at them.

> "And the way you characterized this offense is that you had the gun in the air, that you were just standing there, and that somehow the gun went off." (Id at p. 72 lines 6-9)

compare this to what Petitioner actually said:

> "The only thing I can figure is when he started to come towards me my hand went down and it went off." (Id p. 59 lines 1 - 3)

But because the Board members are familiar with some models of firearms, they cannot conceive that Petition is telling them the truth.

> "And I can tell you that I know something about guns... But it gives me pause anytime somebody says, I had the gun in the air and somehow it went off and shot this guy... You had to, ... release two safeties to shoot him." (Id p. 72 lines 9-14)

Petitioner had several times stated that he had failed to put the safety on. Once again Fisher INSISTS that because Petitioner's version differs from what she believes it cannot be so and, "...it gives me pause...". This can only mean that in her opinion Petitioner is lying about what happened, is minimizing his culpability, and <u>therefore</u> does not have insight into the circumstances of the offense.

In spite of Petitioner's testimony, the evaluation by the EXPERTS of the Mental Health Department, a support letter from the Trial/Sentencing Judge, the Board chooses to rely on the unqualified opinion of the victim's girlfriend in determining Petitioner's mental state at the time of the offense:

Ground 2: b. Supporting cases, rules: (continued)

> "You were clearly angry based on what his girlfriend said about your conduct at the scene." (Id p. 72 lines 16-18 emphasis added).

Petitioner can only wonder when the victim's girlfriend, and for that matter, Commissioner Fisher, became experts on behavior and/or mind-readers. There does not appear to be anything in the record that explains EXACTLY what Petitioner's conduct was that indicated he was angry as opposed to being afraid as he stated.

It could easily be inferred from the commissioner's insistence and leading questions that in fact SHE was angry because Petitioner would not simply accept her version of what happened and succumb.

In further evidence of the Board's insistence on Petitioner vacating his position of events they next refer to a CDC 115 received by Petitioner in years past as evidence of an anger problem that the Doctors of the Mental Health Department state for the record Petitioner DOES NOT HAVE. The event amounts to Petitioner "tossing" a pair of boxer shorts on the inspection table when coming through the work change gate. The officer involved, new to the position and unfamiliar with the procedures, ordered Petitioner to put his shorts on the table for inspection. As Petitioner was more than an arm's reach from the officer's location at the back of the inspection table, Petitioner was forced to "toss" the shorts back or push his way back through a crowd of pushing and crowding prisoners to get to a position where he could "place" the shorts on the table. Commissioner Fisher and Deputy Commissioner Harmon refuse to accept this as the true facts of the event. In their minds, Petitioner was angry and therefore "threw" the shorts at the officer causing him to duck and put his hand up to defend himself. However, simple logic tells us that "IF" Petitioner actually "threw" the shorts at the officer, he would have been

1  Ground 2: b. Supporting cases, rules: (continued)

2  arrested, handcuffed, and escorted to a holding cell for Staff Assault.

3  (about the most serious offense a prisoner can commit.). Instead he only

4  received a CDC 115 some days later and then only after the reporting

5  officer had been chided into it by other officers.

6      This Court may find it of great interest to consider something that

7  happened at Petitioner's hearing that puts the "shorts" incident into

8  perspective. Beginning at page 7 and line 3 of the Hearing Transcripts

9  we find the following exchange:

10  ATTORNEY FERGUSON: We do have some documents to submit today.

11  PRESIDING COMMISSIONER FISHER: Okay, great. Officer, could you grab those?

12  ATTORNEY FERGUSON: There is a packet for each of you.

13  PRESIDING COMMISSIONER FISHER: **That way he doesn't have to HURL them across**

14  **the table.** Thank you. All right. Got everything? (Id p. 7 lines 3-16.

15  Emphasis added)

16      It can CLEARLY be seen that the same sort of situation Petitioner

17  found himself in during the "shorts" incident happens to people all the

18  time. Correctional Officers are not trained communicators and the one

19  involved in the "shorts" incident did not assess the situation as to

20  logistics which created the series of events of which Petitioner was not

21  the cause. Commissioner Fisher apparently correctly foresaw an "accident

22  waiting to happen" and asked a third party, one with the ability to move

23  around the area freely, a freedom Petitioner did not have, to intervene

24  so that Attorney Ferguson would not have to "hurl" the papers across the

25  table. In the "shorts" incident, all the new officer had to do (besides

26  avoiding the whole incident to begin with by following established

27  procedure) was to order Petitioner to walk back around the metal detector,

28  place his shorts on the table, and pass through the metal detector again.

4d

1  Ground 2: b. Supporting cases, rules: (continued)

2      Instead, the Board states:

3      "Frankly, as insignificant as it might seem to you, the incident
       with the officer over going through the metal detector, it just
4      looks like another anger issue."

5      The Board once again reveals their true position in this matter as

6  they state:

7      "But until you address those issues and you quit trying to
       explain them away as being something that you are not responsible
8      for it is going to give us pause." (Id at p. 73, lines 3-6.
       Emphasis added)

9

10     Apparently, admitting guilt, even though not required by law, is

11 not enough for Commissioner Fisher and Deputy Commissioner Harmon. They

12 DEMAND that he agree with THEIR/Governor's version of what happened.

13     The next statement made by Commissioner Fisher would seem to undermine

14 all her previous statements:

15     "And if you had shot that gun as many times as you said that
       you had clearly you knew how it worked." (Id at p. 73, lines
16     19-21. Emphasis added)

17     The Commissioner admits that Petitioner knew his own gun. Yet still

18 refuses to believe that it could go off accidentally as Petitioner

19 describes. Even when Petitioner told the Board that his trial attorney

20 field tested the weapon, and got the same results, the Board refused to

21 believe it. Numerous times during the hearing the Board "cut Petitioner

22 off" when he tried to explain something. They just did not want to hear

23 a version of what happened other than theirs.

24     It is inexplicable how the Board can refuse to accept the testimony

25 of any witness (other than those opposing parole), even the EXPERT

26 testimony of the Doctors of the Mental Health Department (discussed further

27 in Ground 3) or the Trial Judge.

28

                                    4e

7. Ground 2 or Ground ___3___ (if applicable):

THE BOARD ROUTINELY IGNORES THE EXPERT TESTIMONY OF THE DOCTORS OF THE MENTAL HEALTH
DEPARTMENT AND SUBSTITUTES THEIR OWN UNQUALIFIED OPINION IN ASSESSING RISK, REMORSE
AND INSIGHT IN VIOLATION OF THE DEPARTMENT OPERATIONS MANUAL § 62090.13 et seq WHICH
VIOLATES DUE PROCESS RIGHTS UNDER THE 5th & 14th AMENDMENTS TO THE U.S. CONSTITUTION.

a. Supporting facts:

1. Petitioner was Evaluated by the Mental Health Department Doctors in accordance
   with Regulations and the request of the Board at his previous hearing.

2. The current evaluation prepared expressly at the request of the Board, found
   him to be sincere, responsible, insightful and an Excellent prospect for
   parole. In their EXPERT OPINION Petitioner had no anger issues, needed no
   therapy or self help and posed no more threat than the average citizen.

3. The Commissioners, acting under the instruction of their supervisors,
   disregarded this EXPERT testimony and substituted their own unqualified
   opinion to find that Petitioner has "Anger Issues" and "Lacks Insight".
   (Discussed ante in grounds 1 & 2).

4. All of Petitioner's previous Psychological Evaluations have reached the same
   conclusions; i.e., that Petitioner accepts responsibility for his actions,
   is remorseful over the senseless loss of life, understands and has good
   insight into the causative factors underlying his actions.

5. In November of 2005, the Board started handing out notices to prisoners
   attending board hearings that effective then the Board will no longer consider
   Psychological Evaluations but will make such decisions on their own. (Please
   see Exhibit 'D').    (Continued on Ground 3 page 4g)

b. Supporting cases, rules, or other authority:

In re Rosenkrantz 80 Cal.App.4th 409, 424 "Subdivision (b) of section 2402 directs
the panel to consider [a]ll relevant, reliable information available to it,
including... any other information which bears on the prisoner's suitability for
release." cf. In re Morrall 102 Cal.App.4th 280; Biggs v Terhune 334 F.3d 901

(continued on Ground 3 page 4h)

Ground 3: b. Supporting facts: (continued)

6.  In a Memorandum issued January 26, 2006, by DENNIS KENNEALLY, Executive Director, Board of Parole Hearings, this policy was made the "Official" position of the Board. (Exhibit 'D').

7.  The Memorandum, at the last sentence of the first paragraph of page 1 states: "This policy is in effect notwithstanding Department of Corrections and Rehabilitation Department Operations Manual section 62090.13."

8.  The Department Operations Manual (DOM) section 62090.13. et seq. provides a description of, and instructions for preparing, Psychiatric Evaluations [of] Life Prisoners as well as who may make such evaluations and the qualifications of persons tasked to do so. (Please see Exhibit 'E' for relevant pages of the DOM).

9.  Germane to the instant situation is the final paragraph of § 62090.13.2 entitled 'Parole and Release' which specifically requires a threat assessment [for a prisoner] outside a controlled setting.

10. DOM § 62090.14.1 'Procedures' provides for an evaluation by a person other than a psychologist or psychiatrist and lists the minimum requirements the person preparing the evaluation must have.

11. Even a cursory glance at the biographies of the Board members (please see Exhibit 'F') clearly shows that not a single person on the Board is even close to being qualified to make such an assessment.

12. According to PC § 5075(c) the Composition of the Board "shall reflect as nearly as possible a cross section of the racial, sexual, economic, and geographical features of the population of the state.

13. While Petitioner is not in possession of the data from the last census in California, he does not believe that the state population is anywhere near 7 law enforcement personnel for every 10 citizens.

1  Ground 3̶4̶: b̶ Supporting cases, rules: (continued)

2      "the record in this case and the transcript of Biggs' hearing before

3  the Board clearly show that many of the conclusions and factors relied on

4  by the Board were devoid of evidentiary basis..."

5      "The Board must consider...psychological profile as a factor favoring

6  his application for a parole date." In re Ramirez 94 Cal.App.4th 549, 572.

7      Petitioner submits that the Board's findings of lack of insight, anger

8  issues, lack of remorse, minimizing or not accepting responsibility, are

9  mere "make-weight rationalization[s]" for "predetermined conclusions in

10  search of justification." (In re Caswell (2001) 92 Cal.App.4th 1017, 1030.)

11  and are therefore multiple arbitrary and capricious decisions rising to

12  the level of due process violations under the U.S. Constitution Amendment

13  XIV. (CEJA v. STEWART, (9th Cir. 1996) 97 F.3d 1246: "Multiple Errors, even

14  if harmless individually, may entitle petitioner to habeas relief if their

15  accumulative effect prejudiced defendant."

16      Petitioner acknowledges that Board has "Broad Discretion" in making

17  their decisions in parole matters, however it has become crystal clear that

18  they are REPEATEDLY AND INTENTIONALLY abusing that discretion in their

19  continuance of a "No Parole Policy" for political and financial gain.

20  Petitioner asks the court to take Judicial Notice of Melvyn H. Coleman v.

21  Board of Prison Terms, et al., United States District Court Eastern District

22  of Califonia, Case No. Civ. S-96-0783 LKK PAN P, Findings a Recommendations,

23  included herein as Attachment 'III'.

24      Please also take Judicial Notice of EDWARD JAMES WILLARD v. D.L. RUNNELS,

25  et al., United States District Court Eastern District of Califonia, Case

26  No. Civ. S-04-0743 FCD DAD P, RESPONSE TO PETITIONER'S HABEAS CORPUS

27  DISCOVERY REQUEST, included herein as Attachment 'IV').

28  //

CONCLUSION

Petitioner therefore submits that his second subsequent parole hearing was conducted pro forma and was a sham. The decision reached by the Board was a predetermined outcome with complete disregard for any and all information Petitioner or his representing attorney tried to provide.

The hearing therefore was based on arbitrary and capricious decisions, not only lacking evidentiary support, but also contradictory of the record and in violation of Petitioner's right to a fair and impartial hearing, amounting to a violation of his Due Process Rights as protected by the 5th and 14th Amendments to the U.S. Constitution.

Petitioner maintains that the above referenced behaviors by the Board denied him his Liberty Interest in Parole triggering the Due Process Violations of the 5th and 14th Amendments.

It is not enough for a Board to simply mouth words about Petitioner's offense to find him unsuitable. They must make a valid connection as to the facts of the case in doing so. The Board here failed to even suggest what it was about the offense that made Petitioner an unreasonable risk of threat to the public safety, they merely said "..the commitment offense alone..." and then tried to imply that Petitioner lacked insight into the causative factors because his version disagreed with theirs. In doing so, the Board also indicted the Judge, and several Doctors in the Mental Health Department who also see the events as Petitioner tried to present them to the Board.

There can be no mistake but that the Board was/is biased and did not then, nor will they ever, grant Petitioner a fair and impartial hearing.

### PRAYER FOR RELIEF

Petitioner, having provided what he humbly considers to be incontrovertible facts and a prima facie case therefore prays the Court:

1. Assume Jurisdiction of Petitioner's case.

2. Address this Petition in an Expedited manner.

3. Take Judicial Notice of the Exhibits and Petitions referenced herein.

4. Declare the rights of the Parties.

5. Issue an Order to Show Cause.

6. Order an Evidentiary Hearing

7. Appoint an attorney to represent Petitioner or provide funds in order that he may obtain counsel, or in the alternative,

8. Rule on the Merits of the case and,

9. Any other relief (either declaratory or injunctive or both), as the Court may deem reasonable, just and fair.

Dated: _May 4_, 2006

_William Oldright_

WILLIAM OLDRIGHT
Petitioner, in pro per

-8-

DECLARATION OF SERVICE BY MAIL


I, WILLIAM OLDRIGHT, H-14131, declare: I am a resident of the State of California, County of Monterey. I am over the age of 18 years and I AM a party to the within action. My residence address is P.O. Box 689, Soledad, California, 93960-0689.

On April 30, MAY 4, 2006 I served the foregoing PETITION FOR WRIT OF HABEAS CORPUS on the parties listed below by placing a true copy thereof enclosed in a sealed envelope with postage fully prepaid in the United States mail at Soledad, California, addressed as follows:


County of Commitment

In accordance with In re
ORLANDO ROBERTS, 2005 DJDAR 8727
California Supreme Court

CLERK OF THE SUPERIOR COURT
IN AND FOR THE COUNTY OF KERN
1415 Truxtun Avenue
Bakersfield, CA 93301-4172

County of Incarceration

In accordance with Penal Code
Section 1475 per the Fifth
Appellate Court (ORDER attached)

DEAN D. FLIPPO
MONTEREY COUNTY DISTRICT ATTORNEY
240 Church Street, P.O. Box 180
Salinas, CA 93920


There is regular delivery service by the U.S. Postal Service between the place of mailing and the places so addressed.


I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this 30th 4 day of April MAY, 2006, at Soledad, California.


_William Oldright_
WILLIAM OLDRIGHT