# EXHIBIT J

- The inmate tried to help the victim, sought aid after the commission of the crime or tried to dissuade a crime partner from committing other offenses.
- The inmate has a minimal or no history of criminal behavior.
- The inmate was a passive participant or played a minor role in the commission of the crime.
- The crime was committed during or due to an unusual situation unlikely to recur.
- The crime was committed during a brief period of extreme mental or emotional trauma.

### 62090.11.3    Non-Life Prisoner Evaluation Format

The format described below shall be used for non-life prisoner hearings.

Purpose of hearing. Specify in capital letters the type of hearing:
- ISL INITIAL PAROLE HEARING.
- ISL SUBSEQUENT PAROLE HEARING.

**Custody**

Institutional history. Reflect past and present custodies, and their duration in months. Explain the reason for any increased custody specialized housing such as SHUs or PHUs.

**Transfers**

Summarize any transfers during the reported period or since the inmate's reception, recording the most recent transfers first and indicating the reason for the transfers.

**Program Record**

Program record. (Omit sections that are not applicable.)
- Academic education. State the education level at reception. Evaluate ability to learn (IQ), and chronologically summarize academic achievements and motivation, as reported by the Education Department, since the inmate's reception.
- Vocational instruction. Chronologically summarize all past and current training being received and achievements. Note past and anticipated dates of completion. If terminated without completing a course, summarize the reasons.
- Work. Chronologically list all past and current work assignments, noting duration and work habits. Evaluate their total work pattern.
- Self-help programs. Chronologically list participation in group activities for the period of time addressed in the report, such as group counseling, Alcoholics Anonymous and/or Narcotics Anonymous. This section should also include athletic participation, hobby, Inmate Advisory Council or any inmate documentable activity.
- Programs recommended by BPH. Chronologically list the program categories recommended and the degree of participation or reasons for noncompliance. List the current participation first.

**Inmate Resources**

Inmate resources and plans for release.
- Marital status/child support. Summarize present family situation such as married, single, common-law, or divorced. Report status of any marriage intent or returning to a marriage upon release. List obligations to pay family support in dollar amount, name of county and address of agency to receive payments.
- Employment. List job offers if the inmate has job commitments. Include employment address, phone number, type of work and proposed salary. If there are no job offers, the inmate's desires shall be noted. Indicate the relationship between the inmate's intent for employment and institutional work and vocational training.
- Other community resources. Indicate prior union membership, status of driving privileges, if driver's license is valid, and special employment needs, such as tools or clothes.
- Residence. List current county of commitment resources. Indicate name, address, and location of prospective residence upon release. If placement is to be with relatives or friends, review significant attitudes and reasons for this placement. List all phone numbers, directions to the address if in a rural area or a P.O. Box number. Indicate if the inmate will need assistance from the Parole Agent and note any financial resources the inmate may have to aid this placement.
- Alternative County of Parole. If inmate has alternative to county of commitment plans, list them in order of residence, with whom and relationship, any job offers, special needs to complete parole.

**Counselor Evaluation**

Counselor evaluation. (Analysis and professional judgment.)
- Attitude toward offense. Outline the commitment offense and the inmate's present attitude towards it. Note if the inmate's attitude is the same as when received or if it has changed. The inmate shall not be required to admit guilt or discuss factors if they choose not to.
- Institutional adjustment. Describe the inmate's overall behavior pattern in prison, effects of prison on their personality, and their rapport with staff and peers. Describe significant medical or emotional problems and treatment.
- Prognosis. Indicate if the inmate understands or foresees any problems they will face and if the inmate's release plans are realistic. Note if the inmate has developed social skills to cope with the stresses of society. Advise the Parole Agent of problem areas and positive traits. Provide a balanced opinion of readiness for release, being careful not to make a recommendation.
- Technical data. Indicate any holds or notices (agency and reasons). Current status of crime partner, including last Board action on crime partner if presently incarcerated. If enemy or gang affiliation exists, refer to the confidential folder if appropriate. Include any other significant information not covered above.
- Addenda. A chronological list of disciplinary reports shall be compiled and attached to the report. If a disciplinary violation occurs a day to two before the Board hearing, custodial staff shall provide the records office with a brief statement of the incident and an estimate of when the disciplinary process shall be completed.

### 62090.12    ISL Prisoner Progress Hearing

Progress Hearings are held to determine if a previously set parole date should be advanced because of the inmate's conduct. Parole dates may be advanced, but cannot be extended without a separate rescission hearing.

The Post-conviction Progress Hearing Report shall cover institutional history only from the date of the last Board hearing. Each progress report shall be a supplement to the report for the hearing in which parole was granted.

The Parole Consideration Hearing Report that was prepared for the hearing at which parole was granted and all progress reports shall become part of the permanent case summary.

### 62090.13    Psychiatric Evaluations Life Prisoners

The BPH requires a full psychiatric evaluation of life prisoners for all first Documentation, Initial and Subsequent Parole Consideration Hearings. An evaluation is also required for any Rescission Hearing based on psychiatric problems or assaulting/sexual behavior. Inmates shall be retained on psychiatric referral status unless specifically removed by a BPH panel.

Cases recommended to category X [explained in DOM 62080] shall be calendared to appear no sooner than in one year unless the panel specifically instructs that the inmate be calendared upon completion of the evaluation. Those inmates who refuse to participate in a BPH ordered evaluation shall be retained on psychiatric referral status and calendared on the scheduled calendar.

Psychiatric Evaluation Reports shall be completed and distributed to the inmate, the inmate's attorney and the DA at least 15 days before the hearing.

### 62090.13.1    Psychiatric Report Preparation

Brevity with accuracy and clarity is the standard for this report. A more detailed evaluation may be written and attached as an addendum to the report if the psychiatrist/psychologist determines it necessary.

Lay terminology and explanations of technical terms and diagnoses shall be used where possible. These reports become part of a legal record that may be used by many laymen, including the inmate. Accordingly, the report should not contain psychodynamic speculations or other material that may be easily misinterpreted. Information of value to the psychiatrist shall be explained in laymen's terms to avoid misunderstandings.

Detailed repetition of information that is available elsewhere in the inmate's C-File shall be avoided.

Previous psychiatric reports shall be retained in the case summary for reference. If the previous report is virtually the same as the current one, do not rewrite the entire report. Indicate that the case has been reviewed, there is no significant psychiatric change, and the previous report is still accurate.

After the report has been written, any new developments in the case shall be reported on CDC Form 128-C, Medical - Psychiatric - Dental chrono, and sent to the C&PR for inclusion with the psychiatric evaluation.

**62090.13.2    Psychiatric Report Format**

Indicate in the first paragraph if this is the first, second, etc., report to the Board on this inmate, or if it is an addendum (less than nine months since the last evaluation).

Indicate in the second paragraph the frequency of contact with the inmate, such as if they are under treatment and how long, or if it is a single contact for this report only. For the first report only, note any pertinent previous psychiatric history with a short digest of essential conclusions and treatment. Briefly summarize the inmate's current development and progress, avoiding repetition of information available elsewhere in the inmate's C-File or in previous evaluations.

Briefly delineate, in the third paragraph, the present psychopathology supporting the diagnosis and prognosis which follow. Any previously reported psychiatric conclusion(s) shall be re-evaluated. Causative factors, self-understanding, attitudes, motivation for change, emotional stability, social identification, sincerity, and rehabilitation shall be commented on. A neurophysiological appraisal must be included if organicity is present. If drugs are being used for treatment, include the observed impact on the inmate's current condition.

The fourth paragraph shall indicate the psychiatric diagnosis(es) using standard nomenclature followed by lay term explanation, as necessary.

**Psychiatric Conclusions**

The fifth paragraph shall include the evaluator's best estimate of the inmate, based on psychiatric reasoning (not legal or administrative) in the following manner:

- Be sure to note the reasons wherever possible.
- Note the relationship of the diagnosed psychopathology to the criminal behavior.

**General Conclusions**

During observation in the institution, the inmate has:

- Psychiatrically improved slightly, moderately, or greatly.
- Psychiatrically deteriorated slightly, moderately, or greatly.
- Psychiatrically has shown no significant change.

No conclusions can be drawn because of insufficient time and observation by the reporter.

In a less controlled setting, such as return to the community, the inmate is:

- Considered likely to continue improvement.
- Considered likely to hold present gains.
- Considered in all probability to deteriorate because of (list reasons).

In all cases of pedophilia and some other cases of unusually specific or direct relationship between psychopathology and crime, add the following:

- Considered mentally (un)able to refrain from repetition of their offensive behavior.

**Suggested Actions**

(Include only if applicable.) From a psychiatric standpoint, the inmate should:

- Be continued in present rehabilitation program as continued benefit is likely. Note the recommended specific treatment prescription.
- Be removed from special calendar because psychopathology is not significantly related to future criminal behavior and psychiatric opinion will not contribute to release decision.

When two or more favorable psychiatric reports with similar conclusions for release have been written, in the case of more difficult judgments, these reports must have been written by more than one examiner or reviewed by a psychiatric council.

When there have been repeated unfavorable psychiatric reports describing a stable mental condition which cannot be expected to change, the conditions under which parole would be possible or become possible must be spelled out. For example, in some cases, parole might be possible only to a supervised domicile program including psychiatric care. In recommending removal from psychiatric calendar because of repeated unfavorable reports, it must be recognized that release is prohibited and therefore, those changes that would make release possible should be indicated so that the Board will request re-evaluation when such changes do occur.

When the inmate should be considered for transfer to DMH under PC 2684 or DMH inpatient/day treatment at CMF, and it is anticipated that such treatment may result in the inmate being able to return to society; DMH, (if it accepts the transfer) will retain such inmates only as long as it is of benefit to the inmate.

**Parole and Release**

If the inmate is to be paroled or released, consideration should be given to the following:

- Violence potential outside a controlled setting in the past is considered to have been less than average, average, or greater than average and at present, is estimated to be decreased, increased, or the same. In this context, violence potential is equated with inflicting physical harm on others or great emotional harm, as by creating fear. Average violence potential is interpreted to mean the violence potential possessed by the average inmate.
- Conditions of parole should include inpatient treatment, outpatient clinic, halfway house, no alcohol or other special attention/supervision needs as indicated.
- If outpatient clinic is recommended, indicate if:
- Mandatory for parole from institution.
- Necessary as soon as possible after parole.
- Merely desirable if available.

Inmates convicted of PC 273A, Willful Cruelty Toward Child/Endangering Life, Limb or Health and PC 273D, Inflicting Corporal Punishment Upon Child Resulting in Traumatic Injury, shall have a psychiatric evaluation to determine the extent of counseling which may be mandated as a condition of parole per PC 3002.

Applicable cases shall be referred for an evaluation in sufficient time to enable the report to be completed and included with the Release Program Study (CDC Form 611), which is referred to the Division of Adult Parole Operations.

Drug therapy should be continued while the inmate is on parole. They should receive (name drug), in a dosage (amount), (number) times a day.

Recommendations to the classification committee (prior to release):

- Indicate what the Post Board Classification Committee should do with the inmate if the inmate is denied parole.
- If a parole date is set, indicate any recommendation(s) pertinent to the period remaining in the institution before parole such as:
  - A further psychiatric evaluation should be completed just prior to release.
  - Indicate the reasoning for all recommendations.

**62090.14    Preparation of Clinical Reports by Counselors**

There may be occasions when large numbers of psychiatric referrals and limited psychiatric staff may require that qualified CC-IIs prepare clinical reports, in lieu of psychiatric evaluations, for selected cases and under supervision of a Board certified psychiatrist or licensed psychologist.

The format for psychiatric evaluations shall be used by the counselor except the title of these reports shall be changed to "clinical evaluation." Those areas of the format that call for psychiatric diagnosis and psychiatric conclusions shall be changed to indicate personality description and conclusion(s).

Counselors shall not prepare nor sign as its originator any report/evaluation that implies by its title or description that it was prepared by a psychiatrist or psychologist.

A psychiatrist/psychologist shall not sign as their own report, a report bearing a psychiatric title or description which was prepared by a counselor, without having personally interviewed the inmate.

**62090.14.1    Procedures**

PC 5068 sets forth the basis for the above directives. To this end, the following procedures are established:

- When existing staff or consulting psychologists or psychiatrists can adequately handle the evaluation workload, counselors shall not prepare clinical evaluations in lieu of the psychiatric evaluations.
- Counselors who are to prepare clinical evaluations shall be selected on the basis of their:
- Special interest in this type of work.
- Having two years of graduate training and experience in the treatment or evaluation of emotionally disturbed individuals. If the two years of training is primarily academic, supervised field work is highly desired.
- Where appropriate, a psychiatric council shall be established to review such evaluations prepared by counselors.
- The council shall be composed of the institution's chief or program psychiatrist/consulting psychiatrist (chairperson), a clinical

psychologist, a captain or CC-III and the counselor who prepared the evaluation.
- Custodial personnel who are familiar with the inmate's behavior and attitude may also be included on the council.
- The psychiatric council has final responsibility for the accuracy and quality of the report.
- If the report is accepted, it shall list the names of the council and be signed by the council's psychiatrist.

**Supplemental Findings**
- If the council determines there are supplemental findings or recommendations, they shall be added below the counselor's signature and endorsed by the council, as above.
- If there is a difference in the findings of the counselor and the council, the council shall set forth the reasons for their difference of opinion before endorsing the counselor's report.
- The report shall retain the clinical evaluation title unless the psychiatrist personally interviews the inmate.
- After the inmate has been interviewed, the report may be retitled a psychiatric evaluation and signed by the psychiatrist or psychologist.
- The council shall make every effort to interview the inmate when the report is reviewed. Every effort shall be made to maximize the number of inmate interviews to ensure these evaluations reflect the observations of our most highly trained professional personnel.
- Graduate students working towards a doctorate degree in psychology and CC-IIs who are working towards becoming qualified to prepare clinical evaluations for the Board, may prepare such reports under the direct supervision of a licensed staff psychologist or a Board certified psychiatrist.
- Evaluations prepared by students and trainees shall be signed by the student/trainee.
- The evaluation shall be approved and endorsed by a staff psychologist, psychiatrist, or the psychiatric council.

**62090.15    Revisions**
The Deputy Director, Division of Adult Institutions, or designee shall ensure that the content of this Article is current.

**62090.16    References**
PC §§ 3040, 3041, 5058, 5068, and 1168(b).
CCR (15) (2).

### ARTICLE 14 — RESERVED

### ARTICLE 15 — CORRECTIONAL INSTITUTION DESCRIPTION

*Revised October 20, 1999*

**62110.1    Policy**
It is the primary mission of each institution to provide secure housing and supervision for inmates committed to the Department.

**62110.2    Purpose**
The purpose of this section is to describe the security, custody, academic, vocational, industrial, and other programs at each institution for the placement of inmates.

**62110.3    Responsibility**
Each Warden, or their designee shall update the institution's description annually.
*Note*: See Appendix for institution's descriptions.

### ARTICLE 16 — RESERVED

### ARTICLE 17 — SEXUALLY VIOLENT PREDATORS

**62130.1    Policy**
In accordance with W&IC 6600 et seq., the CDC provides a systematic method in the identification, screening, referral, and tracking of potential Sexually Violent Predators (SVP).

**62130.2    Purpose**
The purpose of the SVP law is to provide an additional level of protection to the community from individuals who, based on their social, criminal, and institutional history, are deemed dangerous and predisposed to engage in sexually violent predatory behavior, if released from prison without treatment.

**62130.3    Sexually Violent Predator (SVP)**
The SVP includes the following elements:
- Is in custody under the jurisdiction of the CDC.
- Received a determinate sentence.
- Convicted of a sexually violent offense against two or more victims.
- Has a diagnosed mental disorder that makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior.
- Receives a civil commitment to the State Department of Mental Health (DMH).

The SVP qualifying offenses are identified in W&IC 6600, and DOM 62130.8.

**62130.4    Classification Services Unit Role**
The CSU shall ensure departmental coordination, compliance, and standardization of SVP processes. The CSU performs the following tasks:
- Resolves conflicts.
- Raises concerns for resolution.
- Prepares legislative reviews.
- Provides a computer listing of inmates and parolees in revoked status to each Warden and C&PR/CC III, at least nine months prior to the scheduled release dates. (This list is generated from the Offender Based Information System of inmates subject to registration as sex offenders pursuant to PC Section 290 list.)
- Maintains SVP database, records, and statistics.
- Forwards cases meeting SVP criteria to DMH for further processing. (For cases where a conclusive determination cannot be made based upon a review of the current C-file and archive file documents, see the "BPT" section below.)
- Forwards a copy of DMH or BPT "No" result upon receipt, for placement in the inmate's central file.
- Coordinates the issuance of State identification cards for DMH Evaluators conducting SVP clinical evaluations.
- Generates teletypes for SVP transfers to Atascadero State Hospital (ASH) or Patton State Hospital (PSH) upon request from the SVP Coordinator at either CMC-E or CIW.
- Provides formal training to CDC staff.
- Serves as the CDC liaison to the following:
  - BPT.
  - The CSU refers cases to BPT in which a final determination cannot be made based upon available information. These are commonly referred to as "MAYBE" cases and consist of any SVP package that does not contain complete and sufficient documentation necessary to address the SVP statutory commitment criteria. Typically, "MAYBE" cases will involve out-of-state and out-of-country sex offense convictions; California convictions of SVP offenses for which supporting documentation is missing or incomplete; juvenile adjudications for SVP under certain circumstances; mentally disordered sex offender commitments to DMH; military and federal convictions for any sex offenses, etc. The BPT shall make the determination whether sex offense convictions outside of California contain the same elements as the qualifying SVP offenses listed in the W&IC. The BPT, upon resolution, shall refer the case back to CDC for further processing.
  - The BPT may conduct Probable Cause Hearings, which may result in the placement of a 45-day hold for completion of the DMH process.
  - After release from CDC, the BPT may conduct Revocation Hearing proceedings for SVP precommitments/commitments who are involved in serious revocable misconduct.
  - DMH.
  - The DMH conducts clinical evaluations of potential SVPs to determine if the inmate has a diagnosed mental disorder which makes the inmate a danger to the health and safety of others, in that it is likely that he or she will engage in sexually violent criminal behavior.